IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VAUGHN J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20-cv-4310 |
| v. | ) |
| | ) Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Vaughn J. ("Claimant") moves to reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The Commissioner brings a cross-motion seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §1383(c)(3). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #15), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #19), is denied.

**I.    BACKGROUND**

   **A.    Procedural History**

On May 12, 2017, Claimant (then fifty-three years old) filed a disability application alleging disability dating back to July 1, 2016, due to arthritis, chronic obstructive pulmonary

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by his first name and the first initial of his last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

disease ("COPD"), chronic gastritis, irritable bowel syndrome, depression, anxiety, attention-deficit/hyperactivity disorder, and back and hip pain. (R. 219). His application was denied initially and upon reconsideration. (R. 15). Claimant filed a timely request for a hearing, which was held on April 30, 2019, before Administrative Law Judge ("ALJ") Carla Suffi. (R. 43-77). Claimant appeared with counsel and offered testimony at the hearing. A vocational expert also offered testimony. On May 16, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-42). Claimant filed a timely request for review with the Appeals Council. The Appeals Council denied Claimant's request for review on May 19, 2020, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Social Security Administration Standard to Recover Benefits

To qualify for disability benefits, a claimant must demonstrate that he is disabled, meaning he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical

2

or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered disabled and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), or his capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id.* If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given his RFC, age, education, and work experience. If such jobs exist, he is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

  **C.**  **The Evidence Presented to the ALJ**

Claimant seeks SSI due to limitations from arthritis, COPD, chronic gastritis, IBS, depression, anxiety, ADHD, and back and hip pain. (R. 219). He alleges an onset date of July 1, 2016. (R. 1285). Because the Court's decision relates only to the ALJ's assessment of Claimant's back and hip pain, it will limit the discussion of the evidence accordingly.

### 1. Evidence from Claimant's Medical Records

On April 15, 2016, an x-ray of Claimant's hips showed mild degenerative changes and an x-ray of his lumbar spine showed mild degenerative disc disease and intervertebral disc space narrowing at L1 and L2. (R. 466). On October 31, 2016, a CT of Claimant's lumbar spine showed "very mild degenerative changes, most pronounced at the L1 and L2," where there was a small central disc protrusion, which indented the thecal sac without causing significant spinal canal stenosis. (R. 534-35).

On November 1, 2016, Claimant's primary care practitioner, Frances Norlock, D.O., indicated that Claimant was using a cane, (R. 504), and that his back pain was "not well-controlled." (R. 510). Dr. Norlock ordered an MRI of Claimant's lumbar spine, which showed "minimal multilevel degenerative disc disease without evidence of significant spinal canal or neural foraminal stenosis." (R. 683). At a January 30, 2017 appointment, Dr. Norlock again described Claimant's low back pain as "not well-controlled." (R. 518). She noted that Claimant was using a cane and that medications had not provided any relief from his back and hip pain. (R. 512). Dr. Norlock issued a new prescription and recommended physical therapy. (R. 518).

Claimant visited a pain clinic on June 22, 2017. He reported constant pain in his hips and lower back, which he described as aching and sharp. (R. 714). He noted that the pain had lasted for ten years, radiated from his lower back to his knees, and was exacerbated by standing and walking. (*Id.*). Although Claimant presented with negative straight leg tests, five out of five motor strength, normal sensation, and normal deep tendon reflexes, testing also showed positive bilateral lumbar facet loading and positive bilateral FABER testing. (*Id.*). He was diagnosed with arthropathy of lumbosacral facet joint and bilateral sacroiliitis. (R. 717). The treating provider increased Claimant's Gabapentin dosage and recommended Tylenol, physical therapy,

and acupuncture treatment. (*Id.*). Claimant was then instructed to report to the emergency department regarding his hypertension. There, Claimant presented with normal motor strength, normal sensory reactions, a normal "heel to shin" test, a negative Romberg test, and a normal gait. (R. 684-85).

At a July 17, 2017 appointment, Dr. Norlock diagnosed Claimant with osteoarthritis of both hips and degenerative lumbar disc disease, both of which were not well-controlled. (R. 708). On September 27, 2017, Claimant presented to a pain clinic appointment with positive bilateral lumbar facet loading and positive bilateral FABER testing. (R. 871). He also demonstrated five out of five motor strength, two out of four deep tendon reflexes, negative straight leg tests, and normal sensory reactions. (*Id.*).

A September 18, 2017 x-ray of Claimant's hip showed no fractures, joint space narrowing, or aseptic necrosis. The impression was a "normal right hip." (R. 748). Even so, at a November 20, 2017 pain clinic visit, Claimant reported that his pain was still aching, radiating, and sharp, and he rated it a ten out of ten at worst. (R. 852). Testing showed tenderness of the spine, positive bilateral lumbar facet loading, and positive log roll with internal rotation, as well as a negative FABER test and a normal Piriformis test. (R. 855). The treating provider prescribed additional medications and scheduled Claimant for lumbar facet and hip injections. (R. 857).

Claimant attended his first physical therapy session on June 15, 2018. There, he opined that he could only stay in one position for ten minutes and had difficulty bending and lifting heavy objects. (R. 1151). He described his back pain as constant and aching. (*Id.*). Claimant's strength was generally within functional limits, but his hip strength was not. (*Id.*). Testing showed a decreased range of motion in his spine and hips, poor lifting mechanics, and moderate

weakness and significant tightness of hip musculature. (R. 1151-52). Claimant also presented with negative straight leg tests, negative lumbar distraction, and negative neurological testing. (*Id.*). Claimant was using a cane at the appointment. (R. 1151). His gait was described as "modified independent" with the use of a cane, marked by "decreased cadence, forward flexed posture, [and] decreased step length (bilateral)." (*Id.*). He could climb stairs using both the handrail and his cane, and he could independently transition from seated to standing. (*Id.*). Claimant's prognosis was described as "fair," and he was not classified as a fall risk. (R. 1152).

At a July 30, 2018 pain clinic visit, Claimant presented with positive lumbar facet loading, a negative FABER test, and a normal gait. (R. 1168). Treating provider Preeti Narayan, M.D., prescribed a cane, scheduled another injection, and increased Claimant's gabapentin prescription. (R. 1169). Claimant had medical appointments to address his sleeping problems on September 25, 2017, (R. 887), August 20, 2018, (R. 1177), October 15, 2018, (R. 1183), and March 8, 2019, (R. 1197). At each appointment, it was noted that he had a normal gait.

### 2. Opinions from Claimant's Treating Physician

Claimant's primary care practitioner, Dr. Norlock, completed a physical RFC statement on Claimant's behalf on March 11, 2019. Regarding Claimant's physical limitations, Dr. Norlock indicated that he could not walk one block without rest or severe pain due to his COPD and could not climb steps without the use of a handrail due to his back and hip pain. (R. 1200). According to Dr. Norlock, Claimant struggled with balancing, stooping, crouching, and bending, and could sit for only forty-five minutes at time, stand for twenty minutes at a time, and walk for thirty minutes at a time. (*Id.*). She further found that Claimant could sit for only four hours over the course of an eight-hour workday and stand or walk for about one hour. (R. 1200-02). Claimant required a cane while standing and walking on all surfaces. (R. 1202). He could rarely

lift or carry twenty pounds, occasionally lift or carry fifteen pounds, and frequently lift or carry ten pounds. (*Id.*). Claimant could not push and pull arm or leg controls, or climb stairs, ladders, scaffolds, ropes, or ramps. (R. 1204).

### 3. Opinions from Consultative Examiners

Dilip Patel, M.D., conducted a consultative examination of Claimant on September 5, 2017. He indicated that Claimant required a cane when walking and was unable to safely walk fifty feet without one. (R. 742, 744). Dr. Patel noted significant stiffness, pain, and a reduced range of movement in Claimant's hips. (R. 744). Claimant also presented with positive straight leg tests and a reduced range of movement in his back. (*Id.*). Dr. Patel found that Claimant's motor system was normal "except tremulousness present," and that his deep-tendon reflexes were three out of four. (R. 744). Claimant could not heel-toe walk, squat, or get on and off the exam table without assistance. (*Id.*). Dr. Patel diagnosed osteoarthritis of both hips and degenerative disease of lumbosacral area. (*Id.*).

Maia Feigon, Ph.D., conducted a neuropsychological evaluation of Claimant on October 24, 2018. She described Claimant's gait as normal, but noted that he was using a cane. (R. 926).

### 4. Findings of State Agency Consultants

State agency consultant Marion Panepinto, M.D., reviewed Claimant's file on September 12, 2017. She found that all of Claimant's physical impairments were *non-severe* and required no RFC accommodations. (R. 84, 90). By contrast, state agency consultant James LaFata, M.D., reviewed Claimant's file at the reconsideration level on February 24, 2018, and classified Claimant's spine disorder, joint dysfunction, and COPD as *severe*. (R. 102). He found various exertional, postural, and environmental limitations, (R. 105-07), but ultimately concluded that Claimant was capable of medium work and was not disabled. (R. 110-11).

7

### 5. Hearing Testimony

Claimant used a cane at the hearing. (R. 56). He reported that he struggles to walk and maintain balance without it. (R. 56, 58). Claimant testified that he is able to lift and carry only ten or fifteen pounds and can stand and walk for ten to fifteen minutes at a time. (R. 65).

## D. The ALJ's Decision

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since May 12, 2017, his application date. (R. 17). At step two, she determined that Claimant suffers from the severe impairments of COPD, mild lumbar degenerative disc disease and facet arthropathy, mild hip degenerative joint disease, major depressive disorder, generalized anxiety disorder, and substance abuse. (*Id.*). At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meet or medically equaled one of the Commissioner's listed impairments. (R. 19).

Before turning to step four, the ALJ determined that Claimant has the RFC to perform medium work with various mental limitations and the following physical limitations:

> [H]e can frequently stoop, crouch, crawl, and climb ramps and stairs. He can occasionally climb ladders, ropes, and scaffolds. He can never work in temperature extremes or in environments with exposure to concentrated amounts of humidity and pulmonary irritants such as dusts, fumes, odors, and gases.

(R. 21). Based on this conclusion, the ALJ determined at step four that Claimant is unable to perform his past relevant work as a bottle packer. (R. 34). Even so, the ALJ concluded at step five that a sufficient number of jobs exist in the national economy that Claimant can perform given his age, education, and RFC, including the representative positions of janitor, dishwasher, and order picker. (R. 35). As such, the ALJ found that Claimant had not been under a disability since May 12, 2017, the date his application was filed. (*Id.*).

## II.   STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

9

**III.    ANALYSIS**

For an ALJ to find that a hand-held assistive device is medically required, "there must be medical documentation establishing the need for [the device] to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. Here, the ALJ found that Claimant's cane was not "medically necessary" and declined to include a related restriction in Claimant's RFC. She articulated her reasoning as follows:

> The record showed the claimant used a cane, but it failed to support that the claimant actually needed one. The record regularly indicated the claimant had a normal gait. Further, the diagnostic imaging showed mild findings and his exams repeatedly show[ed] he had normal strength, sensation, and reflexes . . . . Accordingly, there is little evidence to reduce the claimant's standing/walking or adding he needs a cane to ambulate in the [RFC]. Moreover, the claimant was treated only conservatively with medication, acupuncture, injections, and physical therapy.

(R. 26) (citations omitted). Claimant argues that this finding "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." (Dckt. #15 at 9), *quoting Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). Because this argument has merit, the Court finds that a remand to the SSA is warranted and it will not address Claimant's remaining arguments. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to assert them on remand.

The ALJ's assessment of Claimant's need for a cane is inadequate in three respects: (1) it fails to build the requisite "logical bridge" from the record to the ALJ's conclusion; (2) it omits evidence contrary to the ALJ's conclusion; and (3) it improperly relies on Claimant's treatment history.

### A. The ALJ failed to build the requisite logical bridge between the evidence and her conclusion that Claimant's cane was not medically necessary.

The Court first finds the ALJ's assertion that the record "failed to support" a finding that Claimant requires a cane, (R. 26), is contradicted by a plethora of record evidence. In particular, Claimant has been using a cane since at least November 1, 2016, (R. 504), and was prescribed a cane by a physician on July 30, 2018, (R. 1168). He presented with a cane at many of his medical appointments and at his hearing before the ALJ. (R. 56, 504, 512, 742, 926, 1151, 1169). Both his primary care physician, Dr. Norlock, and the state's consultative examiner, Dr. Patel, opined that Claimant not only uses a cane, but *requires* one. (R. 1202) (Dr. Norlock's opinion that Claimant must use a cane while standing and walking on all surfaces); (R. 742, 744) (Dr. Patel's opinion that Claimant could not safely walk fifty feet without a cane). At the April 30, 2019 hearing, Claimant testified that he struggles to walk and maintain balance without his cane. (R. 56, 58). Together, this evidence certainly provides support for a finding that Claimant requires a cane.

It is not enough that the ALJ acknowledged this evidence elsewhere in her decision; she was also required to *explain* how it factored into her medical necessity analysis. *Michael Z. v. Berryhill*, No. 17-cv-50195, 2019 WL 13094919, at *6 (N.D.Ill. June 3, 2019) ("[A] narrative is different than an analysis. The former is not enough; the latter is required."). Instead, she ignored it entirely by suggesting that the record was devoid of evidence supporting Claimant's need for a cane. In doing so, she impermissibly "cherry-picked" only facts supporting her conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.") (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)); *Thomas v. Colvin*, 534 Fed.Appx. 546, 550 (7th Cir.

11

2013) (an ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected.") (internal quotation marks omitted); *Ryon C. v. Kijakazi*, No. 20 C 891, 2021 WL 4552550, at *3 (N.D.Ill. Oct. 5, 2021) (citing *Thomas v. Colvin*, *supra*) ("The Seventh Circuit has made clear that an ALJ must fully consider and address evidence that a claimant needs a cane to ambulate."); *Virginia F. v. Saul*, No. 4:19-CV-00026, 2020 WL 6737876, at *8 (W.D.Va. Nov. 13, 2020) ("Because the ALJ concluded that Virginia did not need a cane without properly considering all the relevant evidence, remand is necessary.").

The most striking omission from the ALJ's RFC analysis is the fact that Claimant has been prescribed a cane by his treating physician. (R. 1168). Again, the ALJ acknowledged this prescription, (R. 25), but failed to explain why it did not compel a finding of medical necessity. This is unacceptable. Although a prescription for a cane from a medical professional does not *require* a finding of medical necessity, *see, Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), it should not be disregarded lightly and the ALJ must address it directly on remand. *See, e.g., Johnson v. Berryhill*, 17 CV 50058, 2018 WL 2463384, at *5 (N.D.Ill. June 1, 2018) ("The doctor agreed to write the prescription, thus presumably reflecting his belief that plaintiff needed a cane."); *Patricia M. v. Saul*, No. 18-CV-3462 (DSD/HB), 2020 WL 3633218, at *7 (D.Minn. Feb. 5, 2020), *report and recommendation adopted sub nom.*, *McArdell v. Saul*, No. CV 18-3462 (DSD/HB), 2020 WL 1951748 (D.Minn. Apr. 23, 2020) ("A prescription . . . for an assistive device is not necessarily dispositive of the presence or absence of medical necessity . . . but it is important to the ALJ's analysis") (citations omitted).

The Court also notes that while the ALJ's analysis paragraph mentions exams showing "normal strength, sensation, and reflexes," it fails to acknowledge the exams that would support a finding that Claimant requires a cane, such as those showing positive bilateral lumbar facet

12

loading,[2] (R. 714, 871, 855, 1168), positive FABER tests,[3] (R. 714, 871), hip strength below normal functional limits, (R. 1151), poor lifting mechanics, (*Id.*), and decreased range of motion, (R. 1151). Again, the ALJ's recitation of this evidence elsewhere in her decision does not allow this Court to trace the path of her reasoning from evidence to conclusion, as is required. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). As written, the ALJ's assessment fails to explain why Claimant's normal test results cited in the analysis paragraph outweigh the abnormal test results cited elsewhere in the decision.

> **B.   The ALJ impermissibly omitted evidence related to Claimant's abnormal gait.**

While the ALJ at least mentioned each piece of evidence discussed above, there is one critical record that she omitted entirely from her decision. The ALJ repeatedly cited Claimant's normal gait as a reason not to include a cane restriction in his RFC. On June 15, 2018, however, Claimant presented to his first physical therapy appointment with a gait that was "*modified independent*" *with* the use of a cane. (R. 1151) (emphasis added). In particular, the therapist noted "decreased cadence, forward flexed posture, [and] decreased step length (bilateral)." (*Id.*). The therapist further noted that Claimant could use stairs *with* a handrail and his cane, that his hip strength was below functional limits, and that he was tender to palpitation. (R. 1151-52). Although these observations are clearly relevant to the question of whether Claimant requires a cane, the ALJ wrote only the following regarding this appointment:

---

[2] A lumbar facet loading test, otherwise known as a Kemp's test, is used to diagnose facet joint pain. A test is positive when it reproduces the patient's pain. In other words, a positive test signals *abnormal* sensation in the facet joints. Kent Stuber et al, *The diagnostic accuracy of the Kemp's test: a systematic review*, 58 J. Can. Chiropr. Assoc. 258 (2014).

[3] A Flexion, Abduction and External Rotation test ("FABER test"), is also a pain provocation test used to diagnose pathologies in the hip and lumbar region. Robroy L Martin & Jon K Sekiya, *The interrater reliability of 4 clinical tests used to assess individuals with musculoskeletal hip pain*, 38 J. Orthop. Sports Phys. Ther., 71 (2008).

13

> On June 15, 2018, the claimant started physical therapy for his back and hip. It was stated the claimant was ambulating with a cane, he had decreased range of motion of his spine and hip, with moderate weakness. Nevertheless, it was found he had a negative straight leg raise and all neurological testing was negative.

(R. 25). By not addressing the therapist's notes regarding Claimant's abnormal gait and inability to climb stairs unassisted – which were consistent with the findings of Drs. Norlock and Patel that Claimant requires a cane – the ALJ impermissibly ignored a line of evidence supporting a finding of disability. *See Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir.2013); ("An ALJ cannot rely only on the evidence that supports her opinion."); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ was not permitted to "cherry-pick" from . . . mixed results to support a denial of benefits.").

        **C.**        **The ALJ's reliance on Claimant's conservative treatment was improper.**

In addition to Claimant's normal gait, the ALJ relied on his conservative treatment "with medication, acupuncture, injections, and physical therapy" to discount his need for a cane. (R. 26). However, the ALJ again failed to explain *why* this treatment history was inconsistent with the need for a cane, as is required. *See Oakes v. Astrue*, 258 Fed.Appx. 38, 40 (7th Cir. 2007) (remanding where ALJ did not adequately explain why physician's recommendation of conservative treatment undermined his assessment of claimant's inability to work); *Martinez v. Astrue*, No. 10 CV 370, 2011 WL 4834252, at *8 (N.D.Ind. Oct. 11, 2011) ("The ALJ may 'consider conservative treatment in assessing the severity of a condition,' but should cite medical evidence about what kind of treatment would be appropriate.").

Furthermore, as a non-medical professional, the ALJ was likely unqualified to conclude that the treatment prescribed by Claimant's doctor, (R. 518), was inconsistent with that same doctor's finding that Claimant requires a cane, (R. 1202). *See Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (finding the ALJ played doctor by discounting the opinion of a treating physician

14

based on his own opinion that, if the claimant was as psychologically afflicted as his treating physician opined, he "would need to be institutionalized and/or have frequent inpatient treatment"); *Leverance v. Astrue*, No. 09-C-559, 2010 WL 3386508, at *2 (E.D.Wis. Aug. 25, 2010) ("[T]he simple fact that [less conservative treatment] would not help Plaintiff does not mean her symptoms were not disabling, and to conclude otherwise (without more) is to 'play doctor.'").

      **D.**      **The ALJ's errors in assessing Claimant's need for a cane were not harmless.**

The Court cannot find the above errors to be harmless where the question of whether Claimant requires a cane is central to the resolution of his application. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("An error is harmless only if we are convinced that the ALJ would reach the same result on remand."). Claimant turned fifty-five on July 8, 2017, placing him in the "advanced age" category. *See* 20 C.F.R. §404.1563(e). Unless he can perform his past work, a person in the advanced age category with no transferrable skills who is limited to light work is deemed disabled under the Medical-Vocational Guidelines ("grids"). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Table 2. Here, the ALJ found that Claimant is unable to perform any past relevant work and has no transferrable skills, (R. 34), but limited him to *medium* work as defined in 20 C.F.R. 416.967(c). This exertional level requires an individual to carry up to twenty-five pounds frequently and lift fifty pounds at a time. It also "presupposes an ability to stand and walk at least six hours in an eight-hour day." *Garrison v. Heckler*, 765 F.2d 710 (7th Cir. 1985) (citing Dictionary of Occupational Titles (3d ed.)); *Yvonne K. C. v. Kijakazi*, No. 20 C 1147, 2022 WL 1104506, at *2 (N.D.Ill. Apr. 13, 2022).

It is likely that the Claimant would be precluded from engaging in medium – or even light – work if he required a cane. *See Millsap v. Berryhill*, No. 2:17-cv-00082, 2018 WL

4214527, at *4 (N.D.Ind. Sept. 5, 2018) ("Because it is possible that the Plaintiff's use of a cane would interfere with his ability to lift and carry [twenty-five to thirty] pound objects and engage in the bending-stooping that goes along with medium work, this claim is also remanded for the ALJ to determine whether the Plaintiff needs to use a cane when standing and walking, and if so, to assess its [effect] on the Plaintiff's RFC."); *Caffrey v. Berryhill*, No. 17-cv-652-BBC, 2018 WL 2078615, at *5 (W.D.Wis. May 4, 2018) (noting that "using a cane could significantly affect the plaintiff's ability to walk, stand, stoop, lift, and perform other activities required for light work"); *Moore v. Astrue*, No. 11 C 1351, 2012 WL 3582211, at *5 (N.D.Ill. Aug. 14, 2012) (VE testified that "an individual using a cane would be precluded from medium work, light work, and all sedentary jobs working in an industrial environment, manufacturing environment, or distribution center"). Accordingly, the Court finds it necessary to remand the case for further proceedings so that the ALJ might address *all* of the evidence related to Claimant's walking abilities. *See Jannson v. Colvin*, No. 13 C 4691, 2015 WL 1810242, at *7 (N.D.Ill. Apr. 17, 2015) (ALJ's cherry-picking was not harmless where it related to a limitation that would have rendered the claimant disabled).

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the final decision of the Commissioner, (Dckt. #15), is granted and the Commissioner's motion for summary judgment, (Dckt. #19), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:  October 7, 2022**

**Jeffrey I. Cummings
United States Magistrate Judge**